IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | Cause No. CR 07-15-BLG-SPW-01 |
|---|---|
| Plaintiff/Respondent, | |
| vs. | AMENDED OPINION AND ORDER (REDACTED) |
| FRITZ ANDERSON, | |
| Defendant/Movant. | |

*This Redacted Order is identical to the Amended Opinion and Order filed under seal in this matter on March 26, 2015 (Doc. 452), except that the details of the assistance provided by three witnesses are omitted pursuant to D. Mont. L.R. CR 49.1(a)(2)(E)(eff. Apr. 7, 2014).*

This case comes before the Court on Defendant/Movant Fritz Anderson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Anderson is a federal prisoner represented by counsel Colin Stephens.

Anderson alleges that he would not have gone to trial and would have pled guilty if he had been certain before trial that he was not subject to a mandatory life sentence under 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 851. In deposition, trial counsel testified that he recommended trial even assuming Anderson would not qualify for a mandatory life term. He did so because, on the one hand, he believed Anderson had a good chance at defeating the gun charge at trial and, on the other

1

hand, the drug quantities likely to be attributed to him would put him so high in the advisory guideline ranges that it made little difference whether he was sentenced to a mandatory term of life or a guideline term of life down to 360 months, with or without an additional five years under 18 U.S.C. § 924(c). *See* Counsel Dep. (Doc. 433-1) at 21:18-22:9, 28:18-30:24, 32:13-22, 35:13-20, 38:3-17.

To assess the reasonableness of counsel's advice, the Court reviewed some of the testimony at trial. In the course of doing so, the Court has become concerned that the prosecutor at trial of Anderson's case might not have fully complied with his obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1973), and *Giglio v. United States*, 405 U.S. 150, 153-55 (1972). Anderson has not alleged a *Brady/Giglio* violation. But, if the United States has not complied, and if Anderson has not discovered that fact through sheer fortuity, how could he allege a violation? This dilemma is why, as Judge Christensen said, "The prosecution's obligations under *Brady* and *Giglio* are self-executing and have no expiration date." Order (Doc. 193) at 6, *United States v. Johnson*, No. CR 06-79-BLG-DLC (D. Mont. Dec. 1, 2014). *See also* 28 U.S.C. § 2255(f)(4); *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012); *Woods v. Carey*, 525 F.3d 886, 890 (9th Cir. 2008).

Concern has emerged in this case because there is no indication in the record of Anderson's trial, held between June 2 and June 6, 2008, that defense counsel was aware of some matters that should have been made known to him. A witness's

track record of testifying or otherwise providing evidence against others to benefit himself may be useful to defense counsel in impeaching the witness. *See, e.g., United States v. Schoneberg*, 396 F.3d 1036, 1041-42 (9th Cir. 2005). Evidence that such benefits have already been conferred, therefore, is relevant impeachment material. Yet, in Anderson's case, material that is sealed but available to the Court[1] was not used against certain trial witnesses in the way that might reasonably be expected. Of course, one possible explanation is that defense counsel made a strategic choice not to use the material. But, under the circumstances of Anderson's case, another possible explanation is that defense counsel did not have the material. *See* Order (Doc. 193) at 2-5, *Johnson*, No. CR 06-79-BLG-DLC (finding prosecutor failed to disclose impeachment evidence as to at least one important government witness); Order (Doc. 746) at 5-11, *United States v. Garcia*, No. CR 04-87-BLG-RFC (D. Mont. Sept. 30, 2011) (finding prosecutor failed to correct false testimony about immunity agreement and failed to demonstrate understanding of immunity agreement).[2]

The following examples, drawn from the testimony of three witnesses at Anderson's trial, demonstrate why the Court is concerned. They do not show a

---

[1] The Court may take judicial notice of its own records. *Rand v. Rowland*, 154 F.3d 952, 961 (9th Cir. 1998) (en banc); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

[2] The same prosecutor who failed to disclose United States' witnesses' cooperation with authorities to the defense in these cases is the same prosecutor involved in Anderson's case and each additional case discussed below. This fact, combined with other pertinent facts discussed below, further raises the Court's concern.

3

violation occurred in Anderson's case. All *Brady* and *Giglio* material may indeed have been disclosed. At the same time, however, evidence that the prosecutor disclosed all *Brady* and *Giglio* material with respect to just these three witnesses would not alleviate *all* the Court's concerns whether *all Brady* and *Giglio* material was disclosed to Anderson's counsel at the appropriate time. For instance, some witnesses testified at trial to selling drugs for Anderson, but they were either not prosecuted in this Court or were prosecuted for non-drug offenses in this Court. Did they enter into agreements with the United States? If so, were the agreements correctly understood and disclosed? Did any witness receive a benefit in another court for testimony in this one? *See, e.g.*, 2 Trial Tr. (Doc. 337) at 305:11-306:23, 334:8-337:8; Order (Doc. 746) at 5-6, 8-11, *Garcia*, No. CR 04-87-BLG-RFC.

Robert Biggs, No. CR 06-52-BLG

Fourteen and a half months before Anderson's trial, on March 22, 2007, Biggs was sentenced for methamphetamine trafficking and possessing a firearm in furtherance of a drug trafficking crime. His advisory guideline range on the drug counts was initially calculated as 84-105 months, but the United States filed a motion to reduce his sentence under U.S.S.G. § 5K1.1. In the motion, the United States said:



4



Sealed § 5K1.1 Mot. (06-52 Doc. 62) at 4. Judge Cebull granted the United States' § 5K1.1 motion and sentenced Biggs to 42 months on the drug counts, half the low end of the advisory sentencing guideline range, and a consecutive five-year term under 18 U.S.C. § 924(c).

At Anderson's trial, the same prosecutor who obtained the § 5K1.1 sentence reduction for Biggs asked him whether he had "pled guilty to a federal drug charge." Biggs answered, "Yes." 4 Trial Tr. (Doc. 339) at 612:16-613:3. There was no further questioning either by the prosecutor or by defense counsel about Biggs's guilty plea or sentence. The sentence, of course, was a matter of public record. But it was not a matter of public record that Biggs had already realized a significant benefit at his sentencing as a result of his cooperation against Anderson and others. As was the case with Heather Schutz[3] in *Johnson*, if the § 5K1.1 motion filed by the United States was not disclosed to Anderson's counsel before trial, then

---

[3] In *U.S. v. Lashawn Johnson*, [CR06-79], the United States failed to disclose that United States' witness Heather Schutz, among other witnesses against Johnson, cooperated with authorities to obtain personal advantages. (Doc. 193). The United States' failure to disclose this information to the defense prior to trial ultimately resulted in Johnson's successful § 2255 motion which caused Judge Dana Christensen to order a new trial. (Doc. 199). Instead of a new trial, the United States dismissed the Indictment against Johnson. (Doc. 202).

Biggs's "receipt of personal benefit in exchange for [his] information and testimony was not bare hope, as the terms of [his] plea agreement suggested, and was not mere potential," but was "concrete and quantified reality." Order at 5, *Johnson*, No. CR 06-79-BLG-DLC; *see also* Biggs Plea Agreement (06-52 Doc. 34) (under seal) at 9-11 ¶ 14. Anderson was entitled to know about it, and if he chose to do so, he was entitled to tell the jury about it.

After Anderson's trial, the United States filed a motion under Fed. R. Crim. P. 35 seeking further reduction of Biggs's sentence. Both the motion and the extent of the reduction tend to show Biggs's testimony was material to the outcome of Anderson's case. The prosecutor described Biggs, among the 45 witnesses who testified at Anderson's trial, as providing "the most compelling testimony regarding the firearms violation to which Anderson was ultimately found guilty." Sealed Rule 35 Mot. (06-52 Doc. 68) at 4 (emphasis added).[4] The prosecutor sought an additional reduction from 42 months to 30 months on the drug counts. Judge Cebull reduced Biggs's sentence from 42 months to 20 months, plus the consecutive five-year term under 18 U.S.C. § 924(c). Sealed Order (06-52 Doc. 73) at 1.

Nichole Waldhalm, No. CR 06-65-BLG

On the same day Biggs was sentenced, March 22, 2007, Nichole Waldhalm

---

[4] The prosecutor said the same thing about Lane Demarais. *See* Sealed Rule 35 Mot. (Doc. 21) at 4, *United States v. Demarais*, No. CR 06-121-BLG-JDS (D. Mont. Oct. 27, 2008).

was sentenced for methamphetamine trafficking. Her advisory guideline range was 151-188 months, but the United States filed a motion to reduce her sentence under U.S.S.G. § 5K1.1. In the motion, the United States said:



Sealed § 5K1.1 Mot. (06-65 Doc. 32) at 3-4.

At Waldhalm's sentencing on March 22, 2007,[5] in a sealed sidebar hearing with the defendant present, the parties and the sentencing judge contemplated that future cooperation from Waldhalm could affect her sentence. In open court, the prosecutor again referred to her testimony as a government witness. Judge Cebull granted the United States' § 5K1.1 motion and sentenced Waldhalm to 113 months, more than three years below the low end of the advisory guideline range and seven months below the ten-year statutory mandatory minimum.

At Anderson's trial, the same prosecutor who obtained the § 5K1.1 sentence reduction for Waldhalm asked her whether she had "pled guilty to certain drug offenses" and "[a]greed to cooperate to testify." He also asked whether she had "been promised anything for your testimony." Waldhalm responded truthfully,

---

[5] The Court has consulted the court reporter's rough transcript of the sentencing hearings and Rule 35 hearings in Waldhalm's and Holliday's cases.

7

including denying that she had been *promised* anything for her testimony. 3 Trial Tr. (Doc. 338) at 485:2-15. There was no further discussion, on direct, cross-, or redirect examination, about Waldhalm's convictions or sentence. The sentence, again, was public record. But it was not a matter of public record that Waldhalm realized a significant benefit at her sentencing due to the § 5K1.1 motion that could only be made by the prosecutor – the same prosecutor who called her to testify against Anderson. Nor was it a matter of public record that everyone at Waldhalm's sentencing told her she might obtain additional benefits in the future for further testimony.

After Anderson's trial, in a motion under Fed. R. Crim. P. 35 seeking further reduction of Waldhalm's sentence, the prosecutor said:



Sealed Rule 35 Mot. (06-65 Doc. 36) at 4. Although the United States sought a reduction only from 113 months to 108 months, Waldhalm personally requested a greater reduction. Judge Cebull granted the Rule 35 motion and re-sentenced Waldhalm to serve 84 months in prison. Order (06-65 Doc. 42) at 1.

Michael James Holliday, No. CR 05-136-BLG

At Anderson's trial, Holliday testified as follows, in response to both the prosecutor and defense counsel, regarding his incentives to testify for the government against Anderson:

> Prosecutor: Would you tell the ladies and gentlemen of the jury your full name? . . .
>
> Holliday: Michael James Holliday.
>
> . . .
>
> Prosecutor: Currently in federal custody, are you not?
>
> Holliday: Yes, I am.
>
> Prosecutor: You pled guilty to a federal charge?
>
> Holliday: Yes, I did.
>
> Prosecutor: You've agreed to cooperate?
>
> Holliday: Yes.
>
> Prosecutor: Pursuant to a plea agreement you've signed, you're testifying here today; is that right?
>
> Holliday: Yes.
>
> Prosecutor: Any promises been made to you by the United States?
>
> Holliday: No.
>
> . . .
>
> Arndorfer: Good afternoon, Mr. Holliday.
>
> Holliday: (No response.)

Arndorfer: You're doing this in an agreement to cooperate; is that correct?

Holliday: Yes, it is.

Arndorfer: And you're hoping that you will get your sentence reduced; is that correct?

Holliday: That would be really nice.

Arndorfer: And did they give you an indication of how much they'd reduce your sentence by?

Holliday: No, I haven't been given any indication that I would be receiving any lesser sentence.

Arndorfer: When were you sentenced?

Holliday: March of '06.

Arndorfer: And how much time are you doing?

Holliday: Twenty years.

Arndorfer: And you're doing that because you've got quite a background; is that correct? Quite a few felony convictions?

Holliday: Yes. Partially, yeah.

. . .

Arndorfer: And what were the charges that you got the 20 years for?

Prosecutor: Objection, Your Honor.

The Court: Overruled.

Holliday: Possession of methamphetamine – possession of

10

dangerous drugs and possession of a firearm.

2 Trial Tr. (Doc. 337) at 341:11-342:3, 354:7-25, 355:14-18. There was no further discussion of Holliday's convictions or sentence.

About a year and a half before Anderson's trial, on October 2, 2006, Holliday pled guilty to possessing a firearm in furtherance of a drug trafficking crime, being a felon in possession of a firearm, and possessing at least five grams of actual methamphetamine with intent to distribute. Holliday Plea Agreement (05-136 Doc. 47) at 3 ¶ 6. Holliday qualified as a career offender. His advisory sentencing guideline range was 262 to 327 months, plus a consecutive five-year term under 18 U.S.C. § 924(c).

The day before Holliday's sentencing, the United States filed a motion to reduce Holliday's sentence under U.S.S.G. § 5K1.1. It said:



Sealed § 5K1.1 Mot. (05-136 Doc. 55) at 4. The United States asked that Holliday's sentence be reduced from the guideline range of 262-327 months to 197

months, more than five years below the low end of the guideline range, plus the consecutive five-year term under 18 U.S.C. § 924(c).

At Holliday's sentencing hearing on March 27, 2007, both parties and the sentencing judge specifically contemplated the possibility of a Rule 35 motion based on testimony Holliday would likely give later. Holliday was sentenced to 190 months, six years below the low end of the otherwise-applicable advisory guideline range, plus five years consecutive under 18 U.S.C. § 924(c). Again, the sentence was a matter of public record. But it was not a matter of public record that Holliday realized a significant benefit at his sentencing due to the § 5K1.1 motion that could only be made by the prosecutor – the same prosecutor who called him to testify against Anderson.

In addition, at sentencing, the parties referred to a "use immunity" agreement. What the agreement was, or whether it included derivative use immunity, the Court does not know. But the agreement may be relevant to Holliday's credibility. *Cf.* Order (Doc. 746) at 5-11, *Garcia*, No. CR 04-87-BLG.

After Anderson's trial, in a motion under Fed. R. Crim. P. 35 seeking further reduction of Holliday's sentence, the prosecutor said:



[REDACTED]

Sealed Rule 35 Mot. (05-136 Doc. 61) at 4-5. In other words, at Anderson's trial, the United States materially benefitted from its ability to tell the jury of Holliday's *disincentive* to testify against Anderson. But it appears possible Anderson's counsel was unfairly prevented from showing the jury the true extent of Holliday's *incentive* to testify against Anderson.

The United States asked Judge Cebull to further reduce Holliday's sentence, apart from the five-year consecutive term under 18 U.S.C. § 924(c), from 190 months to 177 months. *Id.* At Holliday's Rule 35 hearing, his sentence was reduced from 190 months to 120 months. Sealed Order (05-136 Doc. 65) at 1.

Similar patterns emerge with other witnesses who testified at Anderson's trial:

> ➤ Lane Demarais – CR-06-121-BLG
>
> - At Anderson's trial in June 2008, Demarais was in custody for drug and gun charges. 2 Trial Tr. (Doc. 337) at 186:7-11. He testified against Anderson.
>
> - Prior to Anderson's trial, on February 28, 2007, the United States had filed a motion to reduce Demarais' sentence for substantial assistance under U.S.S.G. § 5K1.1 and recommended a 25% sentence reduction, and a 90 month sentence for Counts I and II. (06-121 Doc. 17).
>
> - On March 1, 2007, the Court granted the United States' § 5K1.1 motion and sentenced Demarais to 90 months for Counts I and II. (*Id.* Doc. 19).

13

- At Anderson's trial, with respect to cooperation by the witness, the prosecutor who moved for Demarais' § 5K1.1 reduction asked him if he was in federal custody and if he had entered a plea agreement where he had agreed to cooperate with the government. 2 Trial Tr. (Doc. 337) at 186:12-10. Demarais responded yes. *Id.* On cross, Demarais confirmed that he agreed to testify for the United States pursuant to his plea agreement. *Id.* at 215:20-216:3. Arndorfer did not elicit any further testimony or clarify that Demarais had already received a benefit from his cooperation nor did Arndorfer discuss the extent of the reduction Demarais had received. *Id.*

> Patricia Juney Anne Curfman – CR-07-25-BLG

- At Anderson's trial in June 2008, Curfman was in custody for distribution of methamphetamine. *Id.* at 292: 9-10. She testified against Anderson.

- Prior to Anderson's trial, on August 16, 2007, the United States had filed a motion to reduce Curfman's sentence for substantial assistance under U.S.S.G. § 5K1.1 and recommended a two level decrease to a guideline range of 30-37 months. (07-25 Doc. 24).

- On October 4, 2007, the Court granted the United States' § 5K1.1 motion and sentenced Curfman to 30 months. (*Id.* Doc. 27).

- At Anderson's trial, with respect to cooperation by the witness, the prosecutor who moved for Curfman's § 5K1.1 reduction asked her if she was in federal custody and had pled guilty. 2 Trial Tr. (Doc. 337) at 292:9-13. On cross, Curfman confirmed that she "hoped" her sentence would be reduced by cooperating with the Government. 3 Trial Tr. (Doc. 338) at 6:23-7:13. There was no further discussion, on direct, cross-, or redirect examination, clarifying that Curfman had already received a benefit for her cooperation.

> Jason Devon McAllister – CR-06-16-BLG-05

- When McAllister testified at Anderson's trial in June 2008, he was in custody for the sale of cocaine. *Id.* at 190-18-19. He testified against Anderson.

14

- Prior to Anderson's trial, on February 8, 2007, the United States had filed a motion to reduce McAllister's sentence for substantial assistance under U.S.S.G. § 5K1.1, and recommended a 25% reduction from the mandatory minimum for a sentence of 90 months. (06-16-05 Doc. 367).

- On February 9, 2007, the Court granted the United States' § 5K1.1 motion and sentenced McAllister to 90 months. (*Id.* Doc. 371).

- At Anderson's trial, with respect to cooperation by the witness, the prosecutor who moved for McAllister's § 5K1.1 reduction asked him if he was in federal custody. 3 Trial Tr. (Doc. 338) at 190:18-19. On cross, Arndorfer pointed out that McAllister had entered into a plea agreement where he agreed to provide substantial assistance. *Id.* at 193:14-24. Arndorfer did not seem to know McAllister had already received a reduction for his assistance. There was no further discussion, on direct, cross-, or redirect examination, about McAllister's cooperation or prior sentence reductions for his cooperation.

➢ Medora Nanoff – CR-06-16-BLG-06

- When Nanoff testified at Anderson's trial in June 2008, she was in custody for the sale of cocaine. 3 Trial Tr. (Doc. 338) at 194:19-25. She testified against Anderson.

- Prior to Anderson's trial, on March 19, 2007, the United States filed a motion to reduce Nanoff's sentence for substantial assistance under U.S.S.G. § 5K1.1, and recommended a 35% reduction from the high end of the guidelines for a sentence of 156 months down from the statutory mandatory minimum of 240 months. (06-16-06 Doc. 410).

- On March 22, 2007, the Court granted the United States' § 5K1.1 motion and sentenced Nanoff to 160 months. (*Id.* Doc. 416).

- At Anderson's trial, with respect to cooperation by the witness, the prosecutor who moved for Nanoff's § 5K1.1 reduction asked her if she was in federal custody and had pled guilty to her drug charge. 3 Trial Tr. (Doc. 338) at 194:20-25. On cross, Arndorfer did not ask any questions about Nanoff's cooperation or the fact she had benefited from cooperating with the United States. *Id.* at 196:14-15.

15

The United States does nothing wrong when it seeks testimony from criminal defendants in exchange for sentence reductions or when it grants immunity to persons who would otherwise be vulnerable to prosecution. But it may not keep its decisions secret, and it may not allow false impressions of witnesses' incentives to stand on the record. As noted above, it is entirely possible the prosecutor in this case did exactly what he was required to do. But there is enough ambiguity in the trial record to make it incumbent on the United States to clarify the matter. Unless it is clear the United States fully satisfied its *Brady* and *Giglio* obligations to Anderson, it is not possible to reliably assess either the reasonableness of counsel's advice to Anderson about his choice between pleading guilty and going to trial, or the manner or extent of any prejudice resulting from any unreasonable advice.[6] To put it another way, the Court cannot determine the truth of Anderson's claim under 28 U.S.C. § 2255 unless it knows what Anderson's attorney knew prior to trial regarding any *Brady* or *Giglio* information and thus, whether the trial record accurately reflects that knowledge.

Accordingly, IT IS HEREBY ORDERED as follows:

---

[6] Because Anderson has not claimed counsel was ineffective in failing to use *Brady* or *Giglio* material at trial, any such 'failure' is presumed reasonable. But if Anderson was unfairly deprived of *Brady* or *Giglio* material, then counsel may have been unable to provide reasonable professional assistance and/or unable to avoid prejudicing his client with respect to the issues that are at stake in Anderson's motion. *Strickland* does not require a defendant to show that defense counsel was personally at fault. See *Strickland v. Washington*, 466 U.S. 668. 687-88, 694 (1984).

1. The United States must review all information within its control about the investigation and prosecution of Anderson's case and about the witnesses presented at Anderson's trial to determine whether it is in full compliance with its obligations under *Brady* and *Giglio*. It must respond to this Order on or before **April 20, 2015.**

2. Within 21 days of the United States' response to the Order, Anderson may reply to the Order and/or the United States' response.

The Clerk is directed to file this Order under seal.

DATED this 26th day of March, 2015.

*Susan P. Watters*
Susan P. Watters
United States District Court